CORRECTED COPY*

# UNITED STATES ARMY COURT OF CRIMINAL APPEALS

Before
WOLFE, BURTON, and EWING[1]
Appellate Military Judges

**UNITED STATES, Appellee**
v.
**Master Sergeant ANDREW D. STEELE**
**United States Army, Appellant**

ARMY 20170303

Headquarters, 7th Infantry Division
Lanny J. Acosta, Jr. and Sean Mangan, Military Judges
Lieutenant Colonel James W. Nelson, Acting Staff Judge Advocate

For Appellant: Captain Steven J. Dray, JA (argued); Colonel Elizabeth G. Marotta, JA; Major Julie L. Borchers, JA; Captain Steven J. Dray, JA (on brief); Colonel Elizabeth G. Marotta, JA; Lieutenant Colonel Tiffany D. Pond, JA; Major Julie L. Borchers, JA; Captain Steven J. Dray, JA (on reply brief).

For Appellee: Captain Brian Jones, JA (argued); Colonel Steven P. Haight, JA; Lieutenant Colonel Eric K. Stafford, JA; Captain Jeremy Watford, JA; Captain Brian Jones, JA (on brief).

5 March 2019

---------------------------------
MEMORANDUM OPINION
---------------------------------

*This opinion is issued as an unpublished opinion and, as such, does not serve as precedent.*

WOLFE, Senior Judge:

During appellant's trial, no audio was recorded for approximately twenty-seven minutes of the defense sentencing case. Given the incomplete record of trial, we are compelled to order a rehearing of appellant's sentence.

---

\* The opinion is corrected to properly reflect the initials of the court reporter.

[1] Judge Ewing decided this case while on active duty.

## BACKGROUND

As appellant entered mixed pleas, we summarize the background facts from both the contested and uncontested portions of appellant's trial.[2]

*When security cameras catch the hot tub party*

Appellant was the First Sergeant of the 45th Hazardous Response Company. In April 2016, appellant invited and entertained a group of about seven enlisted soldiers from the company to his former apartment complex. Most of the soldiers were the rank of Specialist or below. Private First Class (PFC) W was the sole female in the group. Appellant provided alcohol to the group, knowing that some of them were not of the legal drinking age. The apartment complex's outdoor common area had a hot tub and a security camera.

Everyone got naked in the hot tub.

With most of the group in the hot tub, appellant performed oral sex on PFC W. Linking the security camera video with witness testimony, appellant placed each of PFC W's legs on his shoulders and placed his head between her legs. When done, two other soldiers serially performed oral sex on PFC W, with appellant telling them to "go for it."[3] Appellant gets in and out of the hot tub naked and walks directly in front of the security camera.

---

[2] A military judge sitting as a general court-martial convicted appellant, pursuant to his pleas, of one specification of violating a general order and one specification of fraternization in violation of Articles 92 and 134, Uniform Code of Military Justice [UCMJ], 10 U.S.C. §§ 892 and 934 (2012). Contrary to appellant's pleas, the military judge convicted appellant of one specification of indecent exposure and one specification of disorderly conduct in violation of Articles 120c and 134, UCMJ, 10 U.S.C. §§ 920c and 934 (2012). The military judge sentenced appellant to a bad-conduct discharge and reduction to the grade of E-3. The convening authority approved the sentence as adjudged.

[3] We are not reviewing a case of sexual assault. In an audio recording, which is recorded later in the evening, PFC W is asked by another soldier whether she consented. She responded, "Yes, one hundred and ten percent, you guys have nothing to worry about." She jokes that she is more likely to be the subject of a sexual assault complaint than to file one. Naked, she is offered a towel to cover up, but she declines the offer of a towel stating she is "already dry." She further states she is totally sober, which is consistent with both how she sounds in the audio recording and her gait and appearance as she later dresses herself in the video.

Appellant pleaded guilty to fraternization and violating an order for providing alcohol to persons underage.  The government then sought to prove up numerous other offenses.  However, the defense was ready and presented a vigorous and well-prepared defense.  As a result, only two additional offenses, indecent exposure and disorderly conduct, were proven beyond a reasonable doubt.[4]

*The red light means it is recording.*

After the military judge rendered findings, the case proceeded to sentencing.  During the defense case-in-chief, the court reporter, Staff Sergeant (SSG) DW, noticed that he had not been recording audio since the last recess.  Accordingly, there was no audio recording of the entire direct testimony of appellant's mother[5] and part of the direct testimony of Lieutenant Colonel (LTC) Jones.  Lieutenant Colonel Jones had served with appellant in a Special Forces unit in Europe.

It was during LTC Jones' testimony that SSG DW noticed that the red light on his recording system was not illuminated.  The red light indicates that the audio is being recorded.  He then began recording the court-martial.  Staff Sergeant DW did not inform the military judge of the recording gap, and would later state that this was consistent with the training he had received from senior court reporters.[6]

The military judge became aware of the recording gap before authenticating the record and directed a post-trial Article 39(a), UCMJ, session.  The government arranged for both witnesses to be present so they could testify and the missing

---

[4]  In a separate assignment of error, appellant alleges that his conviction for indecent exposure is insufficient.  We certainly agree with appellant that not all instances of nudity, even public nudity, are indecent.  Being naked at a nude beach is qualitatively different than flashing a school bus or strangers on the street.  Appellant's acts fall between these two extremes.  In other words, context matters.  Having considered the context in this case, and given the mandate in Article 66, UCMJ, that we "recognize" the trial court saw and heard the evidence, we find the record to be correct in fact.

[5]  There was no cross-examination.

[6]  The Clerk of Court is directed to forward a copy of this opinion to the Senior Court Reporter Instructor at The Judge Advocate General's Legal Center and School for consideration of any lessons learned that may be adopted into the future training of Army court reporters.  The costs, both to the Army and to Master Sergeant Steele, are enormous for an error which likely could have been fixed if SSG DW had, contrary to his alleged training, immediately brought it to the military judge's attention.

testimony could be recaptured. The defense, sensing that there was more to be gained on appeal than by fixing the error at trial, strongly objected to the witnesses being recalled and instead asked the military judge to authenticate the record as is.

The military judge denied the government request to recall the witnesses, "because the court does not believe that [their testimony] would be an accurate or adequate reconstruction of the record of trial as it occurred."[7] Instead, and without the aid of the two witnesses re-testifying, the military judge summarized the testimony from his notes and the court-reporter provided a memorandum for record.

## LAW AND DISCUSSION

We address this appeal in two steps. First, we consider whether the transcript is verbatim. We determine it is not. Second, we address the range of remedies in this case. We conclude a rehearing on sentence is the required remedy.

### A. Is there a verbatim record?

In *United States v. Davenport*, our superior court stated that a record is not verbatim if "the omitted material was substantial, either qualitatively or quantitatively." 73 M.J. 373, 377 (C.A.A.F. 2014) (internal quotations and citations omitted). Or, put less technically, a record is not verbatim if either (a) there is a lot of missing material; or (b) the missing material is important.

We easily determine that the transcript has substantial quantitative omissions. An entire defense sentencing witness is missing.

---

[7] We might suggest that the wiser course of action would have been to first hear the witnesses' testimony (especially as they were present) before deciding that their testimony would be inadequate. In *United States v. Davenport*, for example, a *DuBay* hearing was ordered in an attempt to reconstruct the testimony. 73 M.J. 373, 377-76 (C.A.A.F. 2014). While the *DuBay* was inadequate in *Davenport*, recalling the witnesses in this case was more likely to be successful. First, the Article 39(a) session was only five months after trial. Second, both witnesses were defense sentencing witnesses rather than government merits witnesses. Third, the missing testimony did not include complex interwoven direct and cross-examination as only the direct testimony was missing. A military judge could allow the defense (who bore no responsibility for the error) wide latitude to reconstruct a favorable record for appeal. However, we conclude that the military judge's quoted language above is a finding of fact, which we will give deference. Accordingly, we rule out a fact-finding hearing to try to reconstruct the missing testimony.

4

It is clear from the Court of Appeals for the Armed Forces' (CAAF) opinion in *Davenport*, that for the transcript to be verbatim, it must be *both* qualitatively and quantitatively substantially complete. *Id*. at 337. An omission on either prong is fatal. Having found the transcript to fail on the quantitative prong, we conclude this case lacks a verbatim record.

### B. Do we test for prejudice when a transcript is not verbatim?

There are certainly instances where a missing portion of the transcript is irrelevant to any issue on appeal. Consider, for example, if the record omits the testimony of a witness at a suppression hearing. Certainly, if the defense suppression motion is denied, this court would likely need the testimony to weigh the correctness of the military judge's ruling. But, what if the suppression motion was granted? Or, what if the accused knowingly and voluntarily waived the suppression issue while later pleading guilty? Or, what if the transcript omits the voir dire of a panel member whom the defense successfully challenged? A record under such circumstances would likely be viewed as having substantial quantitative omissions; after all, a whole suppression hearing could be missing.

In their brief to this court, the government argues that they have successfully shown that the omissions in the record have not prejudiced appellant.[8] The CAAF's case in *Davenport,* however, specifically proscribes an alternative remedy.

> [W]hile in the case of most incomplete records prophylactic measures are not prescribed, and the missing material or remedy for same are tested for prejudice, where the record is incomplete because the transcript is not verbatim, the procedures set forth in [Rule for Courts-Martial] 1103(f) control.

*Id*. at 377. Accordingly, we find that under *Davenport*, we do not test for prejudice when we have a non-verbatim transcript.[9]

---

[8] Given the nature of the missing content, that it was a small part of the defense sentencing case, that we have the military judge's summary of the missing testimony, that the accused's sentence is otherwise lenient given the offenses, and the absence of any claim that weighty material is missing, we would find the government's argument to have some merit.

[9] In *Davenport*, the CAAF returned the case to the convening authority *without* setting aside the findings or the sentence. Thus, the CAAF in *Davenport* did not violate Article 59(a), UCMJ. *See* UCMJ art. 59(a) ("A finding or sentence of court-

(continued . . .)

*C. Understanding Davenport in light of the changes to Article 60, UCMJ*

Under Rule for Courts-Martial [R.C.M.] 1103(f), a convening authority faced with a non-verbatim transcript may either (1) approve a sentence that does not include a punitive discharge or more than six months of confinement; or (2) order a rehearing. In *Davenport*, the CAAF returned the case to the convening authority for action in compliance with R.C.M. 1103(f). 73 M.J. at 379.

The foundation of the CAAF's reasoning in *Davenport* is, however, unsettled given subsequent amendments to Article 60, UCMJ. The National Defense Act for Fiscal Year 2014 substantially curtailed a convening authority's traditional powers under Article 60, UCMJ, in cases involving offenses that occurred after 24 June 2014.[10] *See* Pub. L. No. 113-291, 128 Stat. 3292, 3365 (2014). In a case where a punitive discharge was adjudged, such as this one, the convening authority cannot set aside the findings or the punitive discharge. *Id.*; *see also* R.C.M. 1107(c).

Indeed, the instances where a verbatim transcript is required (a punitive discharge or more than six months of confinement are adjudged) *are exactly* the circumstances where the convening authority is no longer allowed to set aside the findings and sentence.

Thus, were we to strictly follow *Davenport*, we would place the convening authority in an impossible position. If there is no verbatim transcript, the convening authority cannot *approve* a sentence with a punitive discharge. The convening authority also cannot *disapprove* the punitive discharge because Congress specifically removed this power.[11] The convening authority also cannot order a

---

(. . . continued)
martial may not be held incorrect on the ground of an error of law unless the error materially prejudices the substantial rights of the accused."). As we will see below, we are in a bit of a bind.

[10] Over the first sixty plus years of the UCMJ, the girders on which the system was built relied, in part, on the traditional Article 60 convening authority power. The 2014 amendment to Article 60 did more than take away a convening authority's ability to grant significant clemency. It also removed the beams that policy makers had relied on when correcting pure legal errors. We faced a similar problem in *In re Vance* where the Army's military justice regulation had relied on the traditional Article 60 power to give effect to Secretarial administrative separations. 78 M.J. 631 (Army Ct. Crim. App. 2018).

[11] There are two exceptions to the prohibition on disapproving a punitive discharge, neither are present here. *See* R.C.M. 1107(d)(C).

rehearing because setting aside the sentence is a precondition to ordering a rehearing.  *See* UCMJ art. 60(f)(3).

We decline to sanction the "absurd" result of remanding the case to a state of eternal appellate limbo, where the convening authority can neither approve the sentence under R.C.M. 1103(f), nor disapprove the sentence under Article 60, UCMJ.  Because we see R.C.M. 1103(f) and Article 60, UCMJ, to be in conflict, the presidentially promulgated rule must yield to the more recently enacted statute.[12]

At oral argument, defense appellate counsel aptly stated this was quite the "pickle."  And, we agree.

### D.  *Between a rock (Davenport) and a hard place (Article 59(a))*

In essence we have a chicken and egg problem.  We cannot affirm appellant's sentence based on a convening authority action that violates R.C.M. 1103.  But, the convening authority cannot comply with R.C.M. 1103 because of amendments to Article 60.  We could break this do-loop if we determined that the missing transcript pages were harmless, however this is exactly what we see *Davenport* as prohibiting.

We conclude the only off-ramp from this highway to nowhere is to deviate slightly from the CAAF's course in *Davenport* and set aside the sentence ourselves before returning the case to the convening authority.  By first setting aside the sentence, we can return the case to the convening authority who may then fulfill his responsibilities under RCM 1103(f) without violating Article 60.

We acknowledge that this decision is questionable.  Based on an error of law (no verbatim transcript) we are setting aside appellant's sentence without assessing whether the error of law prejudiced appellant.  *See* UCMJ art. 59(a).  Perhaps of some relevance, this is also a case where it was appellant who specifically objected to recalling the witnesses to try to reconstruct the missing transcript.

However, we leave it to the CAAF to determine whether we have misapplied *Davenport* or whether the case should be revisited in light of the subsequent changes to Article 60.[13]  For now, we err on the side of giving effect to the CAAF's decision in *Davenport*.

---

[12]  *See, e.g., United States v. Schell*, 72 M.J. 339, 343 (C.A.A.F. 2013) ("[T]he plain language of a statute will control unless it leads to an absurd result.").

[13] A Presidential rule cannot compel a convening authority to take an action prohibited by an Article of the UCMJ.  *See* UCMJ art. 36.  By its text, Article 59(a)

(continued . . .)

**CONCLUSION**

Upon consideration of the entire record, the findings of guilty are AFFIRMED. The sentence is SET ASIDE. The record of trial is returned to The Judge Advocate General for return to the Convening Authority for action consistent with R.C.M. 1103(f). A rehearing on sentence is authorized.

Judge BURTON and Judge EWING concur.

FOR THE COURT:

MALCOLM H. SQUIRES, JR.
Clerk of Court

---

(. . . continued)

does not state that its limitations only apply to the appellate courts. If Article 59(a) applies with equal force to a convening authority granting relief based on an error of law, then following Article 59(a) would prohibit both the convening authority and this court could from setting aside a finding or sentence for a violation of R.C.M. 1103(f) without first assessing whether the accused was prejudiced by the action. If this is correct, while the convening authority traditionally had broad clemency powers, when correcting an error of law, R.C.M. 1103(f) cannot compel a result that Article 59(a) prohibits. But, the CAAF returned the case in *Davenport* to the convening authority, without assessing prejudice, and with the direction that the convening authority follow R.C.M. 1103(f). And, it is hard to read the CAAF's remand in *Davenport* as not requiring the convening authority to follow R.C.M. 1103(f) without regard to a prejudice assessment. Accordingly, we see our decision today as consistent with what *Davenport* requires.